IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM THE UNITED KINGDOM ) | |
| IN THE MATTER OF ) | Misc. No. 07- |
| MICHAEL BROWN ) | |

**GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from the United Kingdom.

FACTUAL BACKGROUND:

This investigation is being conducted by the British authorities who are investigating obtaining property and credit transfers by deception and money laundering.

EVIDENCE SOUGHT:

The British authorities seek information from the Delaware Secretary of State's Office and a company that resides in this District. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in the United Kingdom and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled *ex parte*, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE  19801
(302) 573-6277

Dated: 13 NOV 07

*David Kirk*
*Director, Fraud Prosecution Service*

UKCA Received
19 DEC ...


**CPS**

*Fraud Prosecution Service*
*CPS London*
*3rd Floor, South Wing*
*Rose Court*
*2 Southwark Bridge Road*
*London SE1 9HS*

Judicial authorities of USA

*DX No: CPS ROSE COURT –*
*300851 Ludgate*
*Switchboard: 020 7023 6500*
*Direct line:    020 7023 6503*
*Facsimile:     020 7023 6502*

*Date:* 6 December 2006

*Our Ref:* CR/8597/05

*Your Ref:*

Dear Sirs

**LETTER ROGATORY: USA – Michael Brown**

1. I have the honour to request your assistance in relation to a criminal investigation being conducted by officers on the City of London Police. The Prosecution of Offences Act 1985 states that the Director of Public Prosecutions has the duty to take over the conduct of criminal proceedings (other than certain proceedings relating to relatively minor offences) instituted on behalf of a Police Force. The Director is the Head of the Crown Prosecution Service. As a Crown Prosecutor designated by him I have his powers to conduct the proceedings in this case and I am a designated a judicial authority. Accordingly I am empowered to issue this letter.

2. A Criminal investigation has been instituted against: -

    **Michael BROWN,**
    **Date of birth:** -███████
    **Home address:** -████████████████████
    ████

    in relation to alleged offences of Obtaining Property and Credit Transfers by deception and Money Laundering

3. i) By Section 15A of the Theft Act 1968 (as amended) it is an offence to obtain a money transfer by deception, such deception being described as a representation which the maker knows or believes to be False. Upon conviction in the Crown Court the maximum penalty is a sentence of 10 years imprisonment and an unlimited fine

ii) By Section 328 of the Proceeds of Crime Act 2003 it is an offence to transfer, send or move criminal property out of the jurisdiction of England and Wales or to launder or disguise the same. The penalty upon conviction in the Crown Court is a maximum of 14 years imprisonment and an unlimited fine

iii) Upon conviction the Crown Court has additional powers under the Proceeds of Crime Act to order confiscation of all assets deemed to have been accrued by the defendant as a result of criminal conduct and to impose additional sentences of imprisonment in default of payment

**Summary of Facts**

4. The City of London Police Money Laundering Unit is currently conducting an investigation into Michael BROWN and his associated companies in addition to others alleged to be operating a fraudulent high yield investment scheme. The relevant parties being investigated are as follows: -

- **Basil Aucott Young,**
  **Date of birth** ▮▮▮▮

- **Terence Robert Minton,**
  **Date of birth** ▮▮▮▮

- **Boris Lopatin,**
  **Date of birth** ▮▮▮▮

- **Charles Wesley Woodhead,**
  **Date of birth** ▮▮▮▮

- **Landbase LLC,**
  ▮▮▮▮

- **Univest Financial Group Inc,**
  ▮▮▮▮


CPS

- Craig Christensen,
  Date of birth 

- Jeffrey Moritz,
  Date of birth

- Denis Byrne
  Date of birth

5. The investigation centres upon a number of financial transactions that have taken place in relation to Michael Brown's [MB] company " **5th Avenue Partners Ltd**". Essentially a number of investors have credited the bank account associated with this company to the tune of approximately USD$56 million. Some of these funds have been transferred onto accounts held in America, Switzerland and Spain. Details of the investors are as follows:

**Charles Martin Edwards**

- Date of birth          of
                British citizen. (Former chairman Manchester United Football Club). He credited 5th Avenue with almost USD$12.7 million yet received no financial return.

Edwards was initially contacted by the City of London Police fraud squad in October 2005 as a result of the Hong Kong and Shanghai Banking Corporation (HSBC) bank reporting their suspicions over the dealings with Michael Brown and his company. Martin Edwards was interviewed at length and it emerged that he appears to be a victim of a high yield investment fraud. From his interviews it transpired that:

- Edwards has between 1991 and 2001 sold approximately £100m worth of Manchester United shares.

- In August 2003 Edwards was approached by an associate called Brian McBurnie (British citizen) who wanted to help Edwards to invest some of his funds. Edwards subsequently met a male called Andre RUAGG whom he believed was working for Rothschild's bank in Zurich. RUAGG introduced Edwards to a female called Michelle Golden BOLLARIN.

- BOLLARIN (an American citizen who stated she was from Virginia/Middleburg) encouraged Edwards to transfer $20m to the Bank of


CPS

    Austria in Vienna. She claimed to represent "Cambridge Asset Management" and stated that she would invest the funds on Edward's behalf. She also told Edwards that she was the European representative for a Federal scheme approved by the American government. Edwards did in fact transfer this money however no investments were made with it.

- Eventually his money was returned to him minus transfer fees. During this process BOLLARIN introduced Edwards to her "boss" who met Edwards in Vienna with BOLLARIN. The "boss" being BORIS LOPATIN of Landbase LLC (Santa Monica). This meeting took place in late 2003 early 2004. It resulted in LOPATIN inviting Edwards back to the USA. Edwards in fact did travel to Las Vegas and met Lopatin there. The purpose of the visit was to invest Edward's money however nothing happened due to a glitch at the bank where Lopatin proposed the transfer to occur.

- Subsequently in February 2005 Edwards received a further phone call from Lopatin suggesting an investment deal with a company called 5th Avenue Partners ltd (Brown's company, based in London).

- Meetings took place in London between Lopatin, Edwards and Brown when contracts were drawn up. Edwards understood that he would make an initial investment of $10m which would be transferred into a "segregated non depletion" bank account set up by Michael Brown. His understanding was that this account would hold his money and that investments would be made on the back of the money held. However no transfers of this money would take place without his permission.

- What transpired was Edwards transferring $10m into 5th Avenues HSBC Account number 590099344 on 9/2/05. On 18/2/05 $9.9m was transferred to HSBC New York Chase Bank to a company called REFCO.

- REFCO Securities LLC – received USD$9.9m from 5th Avenue and credited the same with Euros 5.8m. Enquiries by the HSBC bank suggest that Brown's explanation that the funds sent by him were representative of a bonds/options trade were entirely false. An affidavit on behalf of REFCO states that they have not conducted any trades with Brown or his companies.

- Edwards was later shown a computer screen print by Brown purporting to be profits made from investments using his money. This encouraged Edwards and he made subsequent payments of $1,155,000 on 17/5/05, $97,000 on 31/5/05, $741,218 on 31/5/05 and $712,500 on 15/7/05 to the same HSBC bank account. **Therefore a total of approximately $12.7m** being sent by


CPS

Edwards. Edwards received no money as a return/profit on his so-called investment.

- Examinations of the audit trail from Brown's bank accounts with 5th Avenue suggest that his money was used to make two payments to Landbase LLC as follows: $1,129,809 on 27/6/05 and $678,249 on 12/7/05. Furthermore on 4/8/05 a payment of $637,520 was made to other potential victims Kevin SO (Hong Kong/Chinese citizen) and Lu Yan Lucy (Lucy is a Canadian citizen).

**KEVIN SO and LUCY LU**

Kevin SO



Lucy Yan Lu,

They were approached in the first instance by a male called Keith Millar. He stated that he was associated to a company called K M Associates International LLC. He contacted Lucy Lu via email in January 2005. This led to him introducing LU to Robert Minton in the UK on 10/4/05 which led to a further introduction to Michael Brown and Boris Lopatin in London on 11/4/05. Through his assurances that the investment would be safe and the principal sums would be held in a segregated non depletion account held at a reputable bank SO and LU eventually committed themselves to the investment scheme which was being run by Landbase LLC with Brown acting as the trader.

- They made a credit of USD$ 30 million on 20/4/05 to 5th Avenue HSBC account, London from their US Bank account held with HSBC. Further payments from 5th Avenue were paid to their bank account in Hong Kong. In total they received USD$ 3.1 million in return. Examinations of the audit trail from 5th Avenues bank accounts suggest that this money was dissipated to various beneficiaries. The known US beneficiaries at this stage are as follows:

- 21/4/05 payment of $10m to UNIVEST (US Company)
- 26/4/05 payment of $250,000 to UNIVEST
- 26/4/05 payment of £392,812 to LANDBASE LLC
- 12/5/05 payment of $782,499 to LANDBASE LLC
- LU and SO also received a return payment of $782,499 from their original money transfer. In total they have received a return of $3,135,856.47 from their original investment of $30m USD. It is maintained that the so-called return was from money paid by Martin Edwards or another investor.


CPS

### ROBERT MANN

Robert MANN,
Date of birth ▮▮▮▮

- Robert Mann sent USD$ 5 million to 5th Avenue yet only received USD $727,954 in return. There is no evidence that the funds received from Mann were invested. Instead over one million pounds was donated to the Liberal Democrat Political Party in the United Kingdom by Brown and some funds were used to purchase an aircraft (USD$ 4.1M). Mann has an address in Los Angeles. On being contacted by the bank he refused to be drawn on his dealings with Brown.

- **REFCO Securities LLC New YORK** – received USD$9.9m (to Chase Bank account number 140085413) from 5th Avenue and credited the same with Euros 5.8m. However information suggests that this money was transferred to a Spanish bank account. Enquiries by the HSBC suggest that Brown's explanation that the funds sent by him were representative of a bonds/options trade were entirely false. An affidavit provided by REFCO states that they have not conducted any trades with Brown or his companies.

### UNIVEST FINANCIAL GROUP, INC

Craig G CHRISTENSEN
Date of birth ▮▮▮▮

Jeffrey Moritz
Date of birth ▮▮▮▮

- UNIVEST are listed as a firm of attorneys relating to Corporate Finance and Securities.
- Univest credited 5th Avenue Partners ltd with $10m on 21/12/04. This was transferred from the account held by Univest at the Union Bank of California in San Francisco.
- Early examinations of the audit trail show that this money was dissipated to various beneficiaries. This included the following:

    i)   Payment of $38,135.43 to LANDBASE LLC (2/2/05)
    ii)  Payment of $50,847.28 to UNIVEST re commission of trade (2/2/05)
    iii) Payment of $256,000 to UNIVEST (30/3/05)


CPS

      iv)    Payment of $402,240 to LANDBASE LLC (30/3/05)

UNIVEST were later credited with a payment of $10m on 21/4/05 from 5th Avenue. (to account number▓▓▓▓▓▓Union Bank of California)This money appears to be funded from a payment of $30m made by SO and LU on 20/4/05. Records indicate that UNIVEST did in fact receive a total of $10,563,000 from 5th Avenue Partners ltd. Documents have been seized that indicate this is based on a trade that occurred on UNIVEST's behalf therefore includes profits made and the original funds returned. There is certainly documentation that suggests UNIVEST demanded their original money back from LANDBASE LLC.) Although UNIVEST may be satisfied with there financial return there are issues to be addressed. These include:

1. Univest are the ONLY investor to receive money back in the form of representing their original investment and a profit.

2. The money they have received is most definitely <u>not representative of their original funds.</u> It consists mainly of another investor's money and some of their own (potentially $563,000).

3. Further enquiries are yet to be conducted however it is suspected that 5th Avenue have not been involved with any trades and any paperwork to support trades having taken place are to be regarded with extreme caution until their authenticity is verified.

4. Univest and those persons connected to the company are by virtue of their potential proximity to Landbase LLC and by virtue of the financial benefit gained are currently being considered as suspects in this investigation.

<u>KEY EVENTS</u>

- Brown was arrested by City of London Police officers in October 2005 on suspicion of fraud. He was placed on Police bail due to return on the 8th February 2006. A search was conducted at his offices 26 Upper Brook Street, London, W1K 7QE. A number of exhibits and files were seized. During his interview he was unable to provide examples of bonds/options trades that he has been involved in. He describes himself as a banker on the certificate of corporation for the company Devonshire Capital Ltd, however he describes himself as a bonds and options trader on his bank opening forms.

In the meantime HSBC obtained a worldwide freezing order in Civil Proceedings against Brown and his companies. They also secured the surrender of his passport to the High Court in London. Brown obtained another passport and left the UK taking up residence in Majorca. The address was, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Brown was further arrested under the auspices of a European Arrest Warrant in Majorca by the Spanish authorities. He was extradited to the UK in May 2006.


CPS

He has since pleaded guilty to an offence of perjury in respect of information supplied to the High Court in the civil case described above and to an offence of obtaining a passport by deception. He was sentenced to a total term of 2 years imprisonment for these matters.

### LANDBASE LLC would appear to operate from the following addresses

- 1431 Ocean Avenue, Santa Monica CA 90401-2149

- Landbase LLC Po Box 586, Beverley Hills CA 90213

President /Managing Members:

**BORIS LOPATIN**
Date of birth



**CHARLES W WOODHEAD**

It is also believed that associated with Boris Lopatin and Associates LLC, are Cambridge Asset Management Ltd. of Virginia and ECOVEGA LLC.

**Information obtained shows rough notes made on Devonshire Capital Ltd headed paper (one of Brown's companies). This refers to Boris Lopatin having a warrant issued for him by the Inland Revenue Service (IRS) with reference to $600,000 and "Several complaints for advance fee scams".**

Lopatin has made a statement in respect of the civil case involving HSBC. In this statement he confirms that both he and Woodhead are the two principals of Landbase LLC and that they are both US citizens. He states that they have been involved in "private placement projects" for about twenty years. This entails the administration by Landbase LLC of "asset exchanges". He claims these are used to finance a wide variety of infrastructure projects around the world.

He also states that the source of the UNIVEST funds ($10m USD) was the late Andre Meyer. The original intention was to invest these with the Standard Chartered bank in Hong Kong under the auspices of a company called "Intrend Asset Management Ltd who are licensed by the Hong Kong government as a money lender.

The ultimate purpose was for UNIVEST to purchase fixed interest bonds "normally only available to financial institutions". This was to be facilitated by a Canadian citizen called Denis Byrne who is an ex Citibank vice president according to Lopatin. Lopatin further states that Landbase LLC were introduced to Michael Brown via Byrne in December 2004.


CPS

Lopatin then declares that changes in the Hong Kong financial regulations meant that only recognized institutions could open such sub accounts as was being sought for UNIVEST. As Landbase did not want Intrend to be responsible for Univest money it was decided to switch the investment to Michael Brown and his company 5TH Avenue Partners.

In December 2004 Jeffrey Morritz of UNIVEST, Boris Lopatin of Landbase and Denis Byrne all travelled to London to meet Michael Brown. This was followed by meetings with Brown's lawyers and with representative (s) at Brown's bank (HSBC). The arrangements were acceptable to Morritz and as a consequence UNIVEST transferred their investment of $10m USD to Brown's bank account in London (21/12/04).

Lopatin states that in January / February 2005 Brown informed him that he had not been able to trade for UNIVEST as he had not obtained sufficient leverage. Eventually this led to UNIVEST becoming frustrated with Brown and led to them demanding their funds back in mid April 2005.

Lopatin states that he met Martin Edwards through an introduction via a male called Doctor Kevin Kondas a White House fellow who had "previously worked under United states secretary of defence James Woolsey" the former CIA director. Dr Kondas had a business relationship with Cambridge Asset Management (CAM) and introduced Lopatin to CAM. CAM being a licensed securities company. Lopatin cannot recall the introducers name regarding Edwards to CAM. Lopatin then refers to Edwards only having $10m USD to invest at that point and there being a requirement to build the investment fund to $50m USD.

It is not believed that the assertions made by Lopatin are truthful.

**Contracts**

Edwards completed a contract/ agreement with Landbase as did the other investors (Mann/LU/Univest). This is titled the "Private Enterprise Assets Exchange Benefits Participation Agreement". These documents bear the hallmarks of those used in high yield investment/ prime bank instrument related frauds. In this investigation the existence of the documents together with dubious agreements deposited with the HSBC bank purporting to provide guarantees over funds provide strong circumstantial evidence that a fraud has been perpetrated. The Landbase agreement also contains a confidentiality clause most probably designed to ensure that the clients do not seek separate advice or contact law enforcement.

Lopatin, Byrne and Brown met with Edwards in the UK in February 2005. Reassurance was given to Edwards that his principal investment sum would be safe and could be returned to him at any time.

According to Lopatin Robert Mann was introduced to Landbase LLC in February 2005 in London. Terence Robert Minton was present during these meetings acting on behalf of Dr Kevin Kondas. Lucy Yan LU and Kevin So were introduced to Landbase


CPS

via Kondas, Minton and a male called Keith Millar. Again meetings took place in London between LU and Lopatin/Brown.

Lopatin claims that around June 2005 he believed that Brown was not declaring all of the trades and profits being conducted to Landbase. This triggered a meeting between both of them in Toronto during which Lopatin claims he confronted Brown and demanded that Brown properly account for all the profits he made. Lopatin then states that he and Brown disagreed over Brown's intention to bring in an investment of $500m USD leading to Lopatin considering that he should exit from the investment programme with Brown. The next significant event was the revelations in October 2005 that Brown had had his accounts frozen and there was a problem with the investor's funds. Lopatin then states that he negotiated a settlement agreement with Brown to the effect that Brown should repatriate $100m USD once his accounts were unfrozen. This would be representative of the principal funds and anticipated profits from trading.

### WITNESS - EDWARDS

A witness statement obtained from Martin Edwards suggests that BORIS LOPATIN of LANDBASE LLC has been contacting him via telephone since October 2005 when the Police and HSBC began taking action against Brown. LOPATIN has assured Edwards that he would try to assist him in being repatriated with his money and even appointed a power of attorney to a BASIL AUCOTT –YOUNG (based in Cornwall, England) to achieve this. LOPATIN has effectively been funding up to 50% of legal fees which have been used to represent Edwards and the others (SO, LU, MANN) at the High court civil hearings against HSBC.

The basis of this claim in general terms relates to a document submitted to the bank by Brown which seems to have originated from LOPATIN/LANDBASE LLC. The document (attached exhibit HAS/1) is being claimed as a guarantee by the investors that their money would be safe. HSBC's concerns relate to their liability by virtue of the documents existence. The civil case is an entirely separate matter to which the City of London Police are investigating.

However in light of Edwards information regards funding by LOPATIN this information has new meaning. The audit trail concerning Edward's money strongly suggests that LANDBASE LLC and LOPATIN have benefited from the high yield investment fraud. Brown's bank account has effectively facilitated money laundering however the predicate offence appears to be one hatched by LOPATIN over a period of months. This has included gaining the confidence of Edwards over a period of time and encouraging him to invest in Lopatin's and Brown's scheme.

Goodman Derrick (solicitors) acting for Edwards in civil courts have disclosed to the City of London Police that to date they have received £100,000 from Basil Aucott Young which they believe originates from LOPATIN/LANDBASE. Consent has been sought to pay the remainder of the funds left (£22,500) towards legal bills incurred. This consent was refused by the City of London Police on the basis that the funds are potentially criminal proceeds. They are currently being held in a suspense account pending further enquiries regarding their origin.


CPS

Documentary information has been obtained that refers to Basil Aucott Young receiving a payment of $100,000.00 on April 6th 2006 from an account held with "Wells Fargo bank" in the name of Dayton Partners. The account priority number is ▬▬▬▬. Furthermore information also shows a payment from the same bank/company/ account number to Hamilton aviation on April 6th 2006 for $420,000.00. Again on the same date a further transfer from the same account etc was also made payable to Michael Brown for $1,120,000.00. It is strongly suspected that these funds could be the original funds stolen from investors and as such form part of the investigation regarding the audit trail.

6. **Purpose of request.**

   a. To obtain evidence for use in any criminal prosecution that may take place in England and Wales.

   b. To obtain the evidence for the Crown Court to take into account when considering the making of a confiscation order under the provisions of the Proceeds of Crime Act 2002 against Michael Brown and /or others as of yet, not identified in the investigation.

   c. To utilise the evidence obtained in any proceedings in England and Wales ancillary to the criminal proceedings, namely, if the enquiries reveal evidence of assets belonging to Michael Brown and /or others as of yet, not identified.

   d. To utilise the evidence to institute proceedings in the Crown Court to obtain a restraint order under the provisions of the Proceeds of Crime Act 2002.

   e. To utilise evidence obtained in any proceedings in England and Wales ancillary to the criminal and confiscation proceedings, namely for the Crown Court to take into account when considering an application by the Crown Prosecution Service to appoint a receiver to enforce any Confiscation Order under the provisions of the Proceeds of Crime Act 2002 made against Michael Brown and /or others as of yet, not identified.

1. It is requested that each witness statement be taken in writing, dated and headed by the following declaration **"This statement consisting of _____pages is true to the best of my knowledge and belief."** The number of pages should be filled in the space once the statement has been completed and the witness should sign the statement beside the declaration, on every page and at the end. It is requested that the witness' address, telephone number and date of birth be written on the back of the first page of the statement.


CPS

2. Where documentation is obtained from a witness, the witness should produce each document as an exhibit in his/her statement. In order to do this the document should be referred to in the statement by description and exhibit number. The exhibit number should consist of the witness' initials and a consecutive number, for example the first document produced by John Andrew Smith will have the exhibit number JAS/1, the second will be JAS/2 and so on.

3. Where it is requested that documentation be obtained from an official at a business, or organisation the official's statement should state his/her position in the organisation and produce the documents as set out above. In relation to such documents the witness should be asked to state whether the documents were written by him/her. If they were not written by him/her the witness should state how the documents were created and in particular:

   a. Were they created by a person in the course of a trade, business, profession or other occupation;
   b. Was the information contained in the documents supplied by a person (whether or not he was the person who made them) who had, or may reasonably be supposed to have had, personal knowledge of the matters dealt with;
   c. If the information was not supplied directly, did each person through whom it was supplied receive it in the course of a trade, business, profession or other occupation? The witness statement should therefore include the following words: **In order to carry out my duties I have access to all the [insert description of records, for example County/bank] records both manual and computerised relating to [insert what records relate to for example set out address/account number]. The documents to which I refer are derived from and form part of the records relating to the business of [insert the business or organisation for example The County of _____/_____ Bank] and were compiled in the ordinary course of business from information recorded by persons who had, or may reasonably by supposed to have had, personal knowledge of the matter dealt with in the information they supplied. The person or persons who supplied the information recorded in the records cannot reasonably be expected to have any recollection of the matter dealt with in the information they supplied."**

4. That such enquiry is made, persons interviewed and exhibits secured as appears to be necessary in the course of the investigation.

5. That an indication be obtained of the preparedness of any witness to travel to England to give evidence in person.

**Details of specific Enquires to be made**


CPS

### A. The Union Bank of California,

To visit the Fresno Branch of the Bank at 339, PO Box 512380, Los Angeles to establish full details of the account number ▓▓▓▓▓ held by UNIVEST and to obtain a statement in writing from an authorised officer of the bank dealing with the following details:

All banking records held in the name of UNIVEST Financial Group INC and any other accounts held by this company, or any other person(s) known to have signatory powers/power of attorney for the account(s) identified, to include all application forms, mandates, signature cards, cheques, credit and debit slips, statements to cover the period between 1/12/04 to the present date, transfer forms and all other correspondence whether held on computer or not, to include specifically all relevant transactional material connected to the receipt of the monies received from 5th Avenue Partners on or around the following dates: 2/2/05, 30/3/05, 21/4/05, 26/4/05 and all subsequent instructions received in relation to intended onward transfers to external or internal accounts. Also transactional material connected to the payment to 5th Avenue Partners on or around the 21/12/04.

### B. The Union Bank of California,

To visit the Branch at Solvang#425, 1714 Mission Drive, Solvang, CA 93463-2625 to establish full details of the accounts held by LANDBASE LLC. The known account numbers are ▓▓▓▓▓ and ▓▓▓▓▓ Boris Lopatin also has account number ▓▓▓▓▓ at that branch and to obtain a statement in writing from an authorised officer of the Bank dealing with the following details:

    i)    all banking records held in the name of LANDBASE LLC and any other accounts held by this company, or any other person(s) known to have signatory powers/power of attorney for the account(s) identified, to include all application forms, mandates, signature cards, cheques, credit and debit slips, statements to cover the period between 1/12/04 to the present date, transfer forms and all other correspondence whether held on computer or not, to include specifically all relevant transactional material connected to the receipt of the monies received from 5th Avenue Partners on or around the following dates : 2/2/05, 30/3/05, 26/4/05, 12/5/05, 16/8/05, and all subsequent instructions received in relation to intended onward transfers to external or internal accounts. In doing so obtaining a witness statement from the appropriate members of the bank's staff providing details of the above account and producing any of the above documents as numbered exhibits where necessary.


CPS

      ii)      All banking records and details held in the name of Boris Lopatin of a similar nature to those requested in (i) above relating to LANDBASE LLC and relating to any dealings with Michael Brown and 5th. Avenue Partners

As this letter of request details funds subject to a money laundering investigation in the UK have been transferred to accounts held in the names of Univest Financial Group INC and Landbase llc it is requested that:

Should the funds concerned still remain in the accounts detailed above (1&2) it is requested that due consideration be given by the United States Authorities to placing these funds under restraint thereby freezing them from onward dissipation. This request is made in advance of a criminal trial and any subsequent conviction arising in the UK which would ultimately lead to a request for a confiscation order . The funds referred to are believed to be representative of victim's personal investment funds which we seek to repatriate.

C. The Wells Fargo Bank.

To locate the relevant Branch for bank account priority number█████ in the name of Dayton Partners of 1801,Avenue of the Stars, Suite 530, Century City, California 90067 and to visit the said Branch and obtain a statement in writing from an authorised officer of the bank dealing with the following information:

All banking records held in the name of Dayton Partners and any other accounts held by this company, or any other person(s) known to have signatory powers/power of attorney for the account(s) identified, to include all application forms, mandates, signature cards, cheques, credit and debit slips, statements to cover the period between 1/12/04 to the present date, transfer forms and all other correspondence whether held on computer or not, to include specifically all relevant transactional material connected to the receipt or transfer of the monies to/ from 5th Avenue, Landbase llc, Univest Financial group Inc, Michael Brown, Boris Lopatin, Charles Woodhead, Basil Aucott Young, Keith Millar, Terence Robert Minton.

D. KM Associates LLC

This is the company that Keith Millar is associated with. It is requested that enquiries be made to obtain documents relating pertaining to this company's existence (including directors details) be obtained and produced in an evidential format by the appropriate search of Company Records

E. HSBC Bank.

To visit the Branch at 500 Stanton Christiana Road, Newark, Delaware 19713-2107. In respect of this bank the address and the following details were recovered from a


CPS

mobile telephone seized from Michael Brown."Account number ▓▓▓▓ To visit the Branch and obtain a statement in writing from an authorised officer to confirm the existence of any such account held with this bank under this account number or in the name of Michael Brown or 5th Avenue Partners or any other company operated/controlled by Brown.

In the event that there are details and records relating to the above named it is requested that all information, documents, copies of transactions, details of credits and debits and all other correspondence whether held on computer or not be made available

The offficer dealing with this case is :

Detective Sergeant Brian Haughey
City of London Police Fraud Squad
Economic Crime Department
Money Laundering Unit
2nd Floor South
Bucklersbury House
3 Queen Victoria Street
London EC4 8AG
Telephone 44(0) 207 601 2509
Fax 44(0) 207 6012980 and it is respectfully requested that he be allowed to be present during the above enquiries.

I thank you in advance for your valuable co-operations concerning this case.

Yours faithfully

David Levy
Crown Prosecutor
Assistant Director
**Fraud Prosecution Service**


CPS

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST )
FROM THE UNITED KINGDOM )
IN THE MATTER OF ) Misc No. 07-
MICHAEL BROWN )

ORDER

Upon application of the United States of America; and upon examination of a letter of request from the United Kingdom whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in the United Kingdom and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the British authorities as follows:

    1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

    2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party

shall be required);

   3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in the United Kingdom, which procedures may be specified in the request or provided by the British authorities;

   4. seek such further orders of this Court as may be necessary to execute this request; and

   5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the British authorities.

   IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

   Dated: This _____ day of _____, 2007.


_____
United States District Court Judge